**MATSON NAVIGATION COMPANY, INC., Plaintiff,**

v.

**STAL–LAVAL TURBIN AB, Asea Stal-Laval, Inc., and Asea AB, Defendants,**

**Bremer-Vulkan Schiffbau Und Maschinenfabrik, Third-Party Defendant.**

**No. C–84–0659–CAL.**

United States District Court, N.D. California.

March 21, 1985.

J. Stewart Harrison, Kelly C. Wooster, Brian F. Berger, Brobeck, Phleger & Harrison, San Francisco, for plaintiff.

John H. Riddle, Lillick, McHose & Charles, San Francisco, Cal., Philip Le B. Douglas, Hale, Russell & Gray, New York City, for defendants.

John D. Kimball, Healy & Braillie, New York City, Eric Danoff, Graham & James, San Francisco, Cal., for third party defendant.

## OPINION AND ORDER

LEGGE, District Judge.

Defendants duly moved (1) to dismiss under (a) Fed.R.Civ.P. 12(b)(6) and (b) the principle of *forum non conveniens;* (2) for summary judgment on behalf of two defendants; and (3) for sanctions on behalf of one defendant. At the hearing the motions for summary judgment were denied without prejudice, the motion for sanctions was denied and the motions to dismiss were submitted.

The court has studied the very competent and extensive briefs of both sides, the affidavits and declarations in support of and in opposition to the motions, and the legal authorities.

The court now orders, for the reasons set forth below, that the action be dismissed on the ground of *forum non conveniens.*

Because of that dismissal, the court does not reach the motion under Rule 12(b)(6), since the applicable law should be decided by whatever forum assumes jurisdiction over this dispute.

### I.

The following material facts are contained in the pleadings, affidavits and declarations. The court expresses no opinion on the merits of those facts, the allegations or the defenses.

Plaintiff Matson Navigation Company, Inc. ("Matson") is a corporation formed under the laws of the State of Hawaii. Its corporate office and principal place of business is within this district. Defendants Stal-Laval Turbin AB (now Asea Stal AB) and Asea AB are Swedish companies. The former is a wholly-owned subsidiary of the latter. Asea Stal-Laval, Inc. (now Asea Stal Inc.) is a New York corporation and is a wholly-owned subsidiary of Stal-Laval Turbin AB. Third-party defendant Bremer-Vulkan is a West German corporation.

In 1966 Stal-Laval Turbin AB entered into a licensing agreement with Bremer-Vulkan. Under that agreement, Bremer-Vulkan was given the right to manufacture ship engines designed by Stal-Laval Turbin AB.

In 1967 Matson purchased two sets of ship engines from Bremer-Vulkan for use in two vessels being built for Matson by Bethlehem Steel Corporation in Maryland. Stal-Laval Turbin AB designed the engines, including the turbine rotors; Bremer-Vul-

kan manufactured those engines and supervised their installation.

In 1983 the engine on one of the ships was opened by Matson and the turbine rotor removed. During that inspection, Matson determined that the turbine rotor of the engine was fractured. The engine on the second ship was then examined, and a similar crack in its turbine rotor was discovered.

## II.

Matson sues in this district. It alleges that defendants negligently designed the turbine rotors, and that defendants failed to warn plaintiff of allegedly known design defects. Matson attempts to allege tort causes of action. Defendants contend that Matson's causes of action are actually for breach of contract and breach of warranty. Whichever theories are correct, it is apparent that the relationships between the parties arose from negotiated contracts for the design, manufacture and purchase of the engines.

Matson has not sued Bremer-Vulkan, the manufacturer of the engines. But the record shows that this dispute will involve factual questions regarding the manufacture as well as the design of the engines purchased by Matson. Under the terms of the agreement between Matson and Bremer-Vulkan, the parties agreed that disputes involving the engines would be resolved by arbitration before the International Chamber of Commerce ("ICC") in Paris, France, and that the law of West Germany would be applied.

This court previously granted defendants' motion to implead Bremer-Vulkan as a third-party defendant under Fed.R.Civ.P. 14. Defendants contend that Bremer-Vulkan is responsible for negligent manufacture of the engines, and for any defects in the design of the engines under the terms of the licensing agreement between Stal-Laval Turbin AB and Bremer-Vulkan. This licensing agreement provided that any disputes would be resolved through ICC arbitration under the laws of the United Kingdom. Although Bremer-Vulkan has been served with process, it has not yet appeared in the action.

## III.

■ The standard governing a *forum non conveniens* motion recently has been reviewed by the Ninth Circuit in *Cheng v. Boeing Co.,* 708 F.2d 1406 (9th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 549, 78 L.Ed.2d 723 (1983). There, the court endorsed the principles set forth by the Supreme Court in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). Both decisions require this court to consider the "private interest factors" affecting the convenience of these litigants and the "public interest factors" affecting the convenience of the forum. Under those principles, Matson's choice of forum should not be disturbed "unless the balance is strongly in favor of the defendant." *Gulf Oil, supra,* 330 U.S. at 508, 67 S.Ct. at 843. In order to have this action dismissed for *forum non conveniens,* defendants must make:

a clear showing of facts which either (1) establish such oppression and vexation of a defendant as to be out of proportion to the plaintiff's convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems.

*Cheng, supra,* 708 F.2d at 1410.

Upon reviewing the authorities and the record, this court is of the opinion that defendants have made the requisite showing to overcome Matson's initial right to its choice of forum.

## IV.

### A.

■ There are adequate alternative forums.

In the agreement under which Matson purchased the engines from Bremer-Vulkan, Matson consented to arbitration before the ICC in Paris. Although defend-

582

ants were not parties to that agreement, Stal-Laval Turbin AB entered into a separate contract with Bremer-Vulkan regarding the use of Stal-Laval Turbin AB's design of the engines; that contract also provided for arbitration of disputes before the ICC. In addition, later agreements between Matson and defendants, relating to replacement parts for the engines, called for ICC arbitration in the event of disputes. Matson's dealings with Bremer-Vulkan and defendants may also be subject to a standard contract provision of the "general conditions for the supply of plant and machinery for export," known as "UN 188." UN 188 contemplates the application of the law of the country of the vendor, and the resolution of disputes by ICC arbitration. It appears, therefore, that all of the written agreements between the parties over the course of their twenty year relationship provided that disputes would be resolved by ICC arbitration in Paris. In these motions, defendants have consented to arbitration before the ICC in Paris.

The record also indicates that courts in several European forums could assert jurisdiction over the parties. Thus, in lieu of arbitration before the ICC, Matson could attempt to sue defendants or Bremer-Vulkan in Sweden, West Germany or another European forum.

B.

This is an international commercial dispute involving engines designed and built in Europe.

The essence of the case is what happened to the rotors and why. The issues to be litigated will relate to the design, manufacture and use of the product. The issues also will involve the contractual relationships among the parties, and of course the ultimate question of which of the parties will bear the losses.

Those issues can and should be resolved in a forum which was within the expectations of the parties. The agreements to which Matson was a party, regarding the engines and replacement parts, expressly contemplated a European forum. So did the agreement between Stal-Laval Turbin AB and Bremer-Vulkan. Thus, the parties contemplated European venue in their international transactions, and that contemplation should be given great weight.

This court would be less able to provide a full resolution of the disputes than the ICC or a court in Europe. Bremer-Vulkan is not a defendant here, and if named as a defendant would undoubtedly seek ICC arbitration under the terms of its contract with Matson. This court might not even be able to resolve the indemnification dispute between defendants and Bremer-Vulkan in the third-party complaint, because Bremer-Vulkan could compel arbitration of that dispute before the ICC. At most, this court could provide Matson a judgment against defendants; the rest of the case would require another forum. On the other hand, the ICC or a European court could resolve the entire matter in one proceeding.

C.

The law to be applied is another factor that favors a European forum.

The parties disagree on what law should be applied to resolve the underlying disputes. Matson argues for the application of general admiralty law, and for certain principles of California law. Defendants contend primarily for the application of Swedish or West German law. The various contractual agreements between the parties provided for application of West German, British or Swedish law.

Suffice it to say, that either this court or a foreign forum would be required to resolve the issue of what law should be applied to the various aspects of the transactions. A trial in this district would not eliminate the choice of law issues and automatically require the application of California or admiralty law. And if the law of one of the European nations is to be applied, which appears probable under the language of the contractual agreements between the parties, the appropriate European forum could better interpret the law of its own country than could this court.

### D.

Another consideration is the comparative burden on the parties of trial in this district or in Europe.

Each side points to numerous witnesses and documents which must necessarily be transported to some foreign forum. This court is of the opinion that the burden would be less for Matson to transport its witnesses and documents, which will primarily pertain to the fact of loss and the amount of damage, to Europe. The evidence on liability, involving design and manufacture, is in Sweden and West Germany; and that evidence, both witnesses and documents, should be far more extensive than Matson's evidence.

Other factors cited by the parties appear to be evenly balanced between the forums; for example, the use of foreign language interpreters, the compelling of evidence, and other procedural matters.

### V.

The court therefore concludes that both the private and public interest factors discussed in *Cheng* and *Gulf Oil* weigh heavily in favor of a European forum and the record meets the standards stated in those cases for dismissal under the principle of *forum non conveniens*.

NOW, THEREFORE, IT IS ORDERED AS FOLLOWS:

Defendants' motion to dismiss on the ground of *forum non conveniens* is granted, and the action is hereby dismissed, subject to the following conditions:

1. Defendants submit themselves to a forum in which plaintiff institutes an action in Europe, either arbitration before the International Chamber of Commerce in Paris, France, or appropriate civil litigation in a European court.

2. The forum selected by plaintiff asserts jurisdiction over these disputes.

3. Defendants agree to consolidate all proceedings in these disputes, involving plaintiff, Bremer-Vulkan and themselves, into one action.

4. Defendants, or any of them who are financially responsible, consent to satisfy any judgment that may be rendered against them in favor of plaintiff.

5. Defendants agree to toll the running of all statutes of limitation during the period of time from the date this action was commenced until the date that this order is filed.

Because this action is being dismissed on the ground of *forum non conveniens*, the court does not reach defendants' motion to dismiss under Fed.R.Civ.P. 12(b)(6).